UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:24mj03358 Goodman

FILED BY_____ TS _____D.C.

**Jul 3, 2024**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami, Fl

IN RE SEALED COMPLAINT
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)?   No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   No

3. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?   No

4. Did this matter involve the participation of or consultation now Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?   No

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: *Daniel Bernstein*

Daniel Bernstein
Assistant United States Attorney
Florida Bar No. 0017973
United States Attorney's Office
99 Northeast Fourth Street
Miami, Florida 33132-2111
Tel.: (305) 961-9169
Email: Daniel.Bernstein@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.  1:24mj03358 Goodman |
| | ) | |
| MALAINA CHAPMAN, | ) | |
| | ) | |
| _Defendant._ | ) | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___February 10, 2021- February 2022___ in the county of _____Miami-Dade_____ in the
____Southern____ District of _____Florida_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1349 | Conspiracy to Commit Wire Fraud |
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. 1344 | Bank Fraud |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Curtis Wilkins, Special Agent, USPS-OIG
_Printed name and title_

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by ___Face Time___

Date:  7/3/24

_____
_Judge's signature_

City and state:          Miami, Florida

Honorable Jonathan Goodman, United States Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Curtis Wilkins, being duly sworn, depose and state as follows:

### Introduction

### Purpose of the Affidavit

1.     I am a Special Agent with the United States Postal Service-Office of Inspector General (USPS-OIG) and have been since 2014.    Prior to working at USPS-OIG, I was employed as a Special Agent with the United States Department of Health and Human Services, Office of Inspector General (HHS-OIG) from 2005 to 2014. In these positions I have been involved in hundreds of fraud investigations involving health care fraud, money laundering and Federal workers compensation fraud.   I am currently assigned to a group that investigates workers compensation fraud and other federal offenses committed by USPS employees. I have been the affiant on numerous prior search warrants and have been involved in the execution of numerous search warrants.

2.     This affidavit is made in support of a criminal complaint charging MALAINA CHAPMAN (hereinafter referred to as the "CHAPMAN').

3.     The information contained in this Affidavit is based on, among other things, my participation in the investigation described herein, my review of the relevant documents and emails, information obtained from law enforcement officers and others, and knowledge gained from my training and experience.  Because I submit this Affidavit for the limited purpose of establishing probable cause, it does not set forth all of my knowledge about this matter.

4.     Based on my training and experience, and the facts set forth in this Affidavit, I submit that there is probable cause to believe that the defendant committed a number of federal offenses including conspiracy to commit wire fraud, in violation of Title 18, United States Code,

Section 1349, wire fraud, wire fraud in violation of Title 18, United States Code, Sections 1343 and bank fraud in violation of Title 18, United States Code, Section 1344.

## PROBABLE CAUSE

5.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 designed to provide emergency financial assistance to the millions of Americans who suffered the economic effects caused by the COVID-19 pandemic.

6.     One source of relief provided by the CARES Act was a program called the Paycheck Protection Program ("PPP"), which authorized forgivable loans to small businesses for job retention and certain other expenses. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business to acknowledge the program rules and certify its eligibility. A sole proprietorship was likewise required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan applications required the sole proprietorship (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain a PPP loan. In the PPP loan application (Small Business Administration (SBA) Form 2483-C, a sole proprietorship without employees (through its authorized representative) was required to provide, among other things, the total amount of gross income as reported on the 2019 or 2020 IRS Form 1040 Schedule C, line 7 ("Schedule C"). This figure was used to calculate the amount of money the sole proprietorship was eligible to receive under the PPP.

7.     The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on certain permissible expense items within a designated

period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

8.    When a PPP lender disburses a PPP loan, the lender sends an electronic transmission from one (1) of two (2) SBA computer servers located in the State of Virginia.

9.    The City of Miami Emergency Rental Assistance program was a Covid-19 relief program designed to help Miami residents facing economic hardship caused by the Covid-19 pandemic to pay their rent.

10.    The State of Florida also had an Emergency Rental Assistance Program that was administered by the Florida Department of Children and Families and designed to help Residents of the State of Florida facing economic hardship caused by the Covid-19 pandemic to pay their rent.

11.    Credit Union 1 was a credit union that extended traditional banking services to residents of Miami-Dade County and elsewhere. Credit Union 1 was an institution that is insured by the National Credit Union Administration.

12.    Lender 1, based in Laguna Hills, California, and was an SBA- approved lender of PPP Loans.

13.    Lender 2, based in Lake Mary, Florida, and was an SBA-approved lender of PPP loans.

14.    Lender 3, based in New York, New York, and was an SBA-approved lender of PPP loans.

15.    Lender 4, based in Coral Gables, Florida, and was an SBA-approved lender of PPP loans.

16.    Financial Technology Company 1, based in San Francisco, California, provided

identification verification services to Lenders 1, 2 and 4.

17.      Individual 1 was a resident of Brevard County, Florida.

18.      Museum 1 was a museum located in Miami-Dade County, Florida.

19.      CHAPMAN was employed as a Disaster Relief Specialist with the SBA from September 28, 2020, through her resignation on March 18, 2021.

20.      DA TRAP LLC ("DA TRAP") was a corporation organized under the laws of the State of Florida. According to SUNBIZ, CHAPMAN was listed as the Manager of the company.

21.      Upscale Credit Lounge, LLC ("Upscale Credit Lounge") was a corporation organized under the laws of the State of Florida. According to Sunbiz, CHAPMAN was listed as the Manager of the corporation.

22.      Individual 2, was CHAPMAN'S mother who died on May 20, 2020.

23.      Individual 3 was a resident of Miami-Dade County.

## CHAPMAN'S ROLE IN WIRE FRAUD CONSPIRACY CHARGED IN CASE NO. 24-20079-CR-FAM

24.      On May 30. 2024, a grand jury sitting in the Southern District of Florida returned a Superseding Indictment against Raisha Kelly and five (5) other individuals in case number 24-20079-CR-FAM(s). In sum, the Superseding Indictment charged that Kelly submitted and caused the submission of false and fraudulent information and documentation in support of PPP loan applications, including falsified Internal Revenue Service ("IRS") forms, among other things that falsely and fraudulently represented the annual gross receipts and tentative profits of purported sole proprietorships. This conspiracy, led by Kelly, was responsible for the submission of over forty (40) false and fraudulent loan applications that caused PPP lenders to make loans in excess of $800,000 to borrowers who were not qualified to receive them. Through the execution of an email search warrant on the email account Info.wealthyholdings@gmail.com, your Affiant

4

learned that CHAPMAN played a crucial role in aiding Kelly's conspiracy by providing false and fraudulent Schedule C's that were later submitted to PPP lenders. Specifically, your Affiant's review of the email account revealed that there were ten (10) separate instances in which CHAPMAN sent false and fraudulent Schedule C's in the names of individuals for whom Kelly prepared PPP loan applications.

25.     For example, on March 31, 2021, CHAPMAN sent an email to Kelly that contained a tax year 2020 Schedule C for a sole proprietorship owned by Widny Thibaud ("Thibaud"), one of Kelly's co-defendants in Case No.24-20079-CR-FAM(s). Thibaud caused the submission of two (2) PPP loan applications to Lender 2 and Lender 4 respectively. Portions of these applications were submitted via interstate wire communications. The Schedule C's prepared by CHAPMAN were submitted in support of Thibaud's applications stated that his business had annual gross revenue of $99,802 and profits of $52,039. The lenders accepted the representations in the loan application and on or about April 23, 2021, Thibaud received a loan in the amount of $20,792 from Lender 2 and on May 27, 2021, he received a loan in the amount of $20,792 from Lender 4. Further investigation revealed that the Scheduled C attached to Thibaud's loan applications was false and fraudulent.

**CHAPMAN'S SUBMISSION OF HER OWN FRAUDULENT PPP LOAN APPLICATIONS**

26.     On February 10, 2021, CHAPMAN, again while employed by the SBA, submitted, via interstate wire communication, a loan application in the name of Upscale Credit Lounge to Lender 3. In support of her application, CHAPMAN submitted a tax year 2020 Schedule C that reported gross revenues of $103,674 and a tentative profit of $81,860. Lender 3 relied upon the representations in CHAPMAN'S application and on February 11, 2021, approved

a loan in the amount of $17,052.50. Further investigation revealed that the Scheduled C attached to this application was false and fraudulent.

27.     On February 19, 2021, Chapman, again while still employed by the SBA, submitted, via interstate wire communication, a PPP loan application with Lender 3 on behalf of DA TRAP. In her application, CHAPMAN claimed that she had four (4) employees and an average monthly payroll of $14,191. In support of her application, CHAPMAN submitted four (4) IRS Employers Quarterly Tax Return ("Form 941"), which purportedly documented the wages paid by DA TRAP. Lender 3 relied upon the representations in the application and on February 26, 2021, approved a loan in the amount of $35,477.50. Further investigation revealed that the multiple IRS Forms 941 attached to CHAPMAN'S application were false and fraudulent.

28.     On April 10, 2021, CHAPMAN submitted, via interstate wire transmission, a loan application to Lender 1 for a sole proprietorship property management business. In support of her application, CHAPMAN submitted a Schedule C in which she stated her gross revenues were $123,950, and her tentative profits were $78,187. Lender 1 captured the IP Address of 98.203.44.206 in connection with the filing of this loan application. Lender 1 relied upon the representations in the loan application and on April 15, 2021, approved a loan in the amount of $20,833. Further investigation revealed that the Scheduled C attached to this application was false and fraudulent.

## CHAPMAN's ATTEMPTED FRAUD IN CONNECTION WITH OBTAINING A HOME EQUITY LINE OF CREDIT

29.     Through the review of financial records, your Affiant learned that CHAPMAN applied for a Home Equity Line of Credit (HELOC) from Credit Union 1 and submitted falsified documents in support of the application. Specifically, on May 11, 2023, CHAPMAN submitted

her application and requested a HELOC in the amount of $115,000.   As is typical in all residential loan applications, Credit Union 1 required CHAPMAN to submit proof of her employment and on June 3, 2023, CHAPMAN submitted pay stubs from Museum 1 that stated she was employed by Museum 1 and received a bi-weekly paycheck of $1827.66.  Pursuant to the issuance of grand jury subpoenas issued to Museum 1, your Affiant confirmed that CHAPMAN was never employed by Museum 1 and that the pay stubs she submitted to Credit Union 1 were forged.   On June 11, 2023, Credit Union 1 denied CHAPMAN's HELOC application.

### CHAPMAN'S PREPARATION OF FALSE AND FRAUDULENT PPP LOAN APPLICATIONS IN RETURN FOR A KICBACK

30.   Through the execution of an email search warrant on the email account info@upscalecredit.net your Affiant learned that in addition to preparing PPP loan applications in her own name, CHAPMAN also prepared PPP loan applications on behalf of other people in return for a payment of a kickback.  Specifically, your Affiant reviewed one email in which CHAPMAN wrote:

Hey there, thank you for allowing The Upscale Resource to assist with your PPP application. Congratulations on being approved by the SBA. Next steps would be for your to use the funds correctly so that the loan will be forgiven.  We also provide loan forgiveness assistance. Please see below to process for payment for funds received."

31.    The same email then had a heading that stated, "PPP &2020 Schedule C draft-10% back end" and then stated "if you received a loan in the amount of $20,833 your payment today will be $2083." Through a review of the calendar appointments in the email account info@upscalecredit.net your Affiant found several individuals who had appointments scheduled with CHAPMAN that were titled "PPP forgiveness." Your Affiant then took several of those names and ran them in a PPP loan database and determined that the individuals applied for and

received PPP loans. Individual 3 was one of the persons scheduled to speak with CHAPMAN about PPP forgiveness and investigation revealed that on May 20, 2021, a PPP loan application was submitted on behalf of Individual 3 to Lender 1. A Schedule C was submitted in support of that application that stated in tax year 2020 Individual 3 had a sole proprietorship with gross revenues of $98,588 and tentative profits of $9,409. On May 27, 2021, Lender 1 accepted the representations in the application and approved a loan in the amount of $20,539. Investigation has revealed that the Schedule C attached to this application was false. During the submission of this loan application one of the IP addresses captured by Lender 1 was 98.203.44.206. This is the same IP address that was captured when CHAPMAN submitted her own loan application to Lender 1, which is discussed in more detail in paragraph 29 above.

## CHAPMAN'S WIRE FRAUD IN CONNECTION WITH THE CITY OF MIAMI EMERGENCY RENTAL ASSISTANCE PROGRAM

32.     On April 13, 2022, CHAPMAN applied for emergency rental assistance from the City of Miami for an apartment she leased at 1480 NW N. River Drive, Miami, FL 33125. In her application, CHAPMAN answered "No" to the question "do you have any assets valued in excess of $5000?" A search of Miami-Dade property appraisers office records by your Affiant revealed that on December 31, 2021, CHAPMAN became the owner of three (3) separate single family homes in Miami-Dade County. According to Miami-Dade County property records, the tax year 2023 assessed of these three (3) single family homes is $727,299. In the same application, CHAPMAN certified that she did not receive any rental income from real or personal property. Your Affiant has obtained CHAPMAN'S bank records and an analysis of them revealed that CHAPMAN from September 20, 2021, through April 2022, received approximately $24,115 in payments from an internet-based home rental website prior to the

filing of this application. This includes a total of $3723 in payments from the same internet-based home rental website during the month of April 2022.  The City of Miami relied upon the representations in the application and on June 21, 2022, it sent a check in the amount of $14,525 to the landlord of 1480 N. River Drive Miami, FL 33125.  This check was then remotely deposited, via interstate wire communication, into a bank in the State of Utah.  After signing her application claiming she received no rental income CHAPMAN received $5,971 in payments from the same internet-based home rental website.

**Wire Fraud Involving State of Florida Our Florida Emergency Rental Assistance Program**

33.     From on or about October 13, 2021, through in or around February of 2022, CHAPMAN engaged in a scheme to defraud the State of Florida Emergency Rental Assistance Program. On October 13, 2021, CHAPMAN began the process of applying for benefits under the State of Florida's Emergency Rental Assistance program.  CHAPMAN was purportedly a tenant at 2614 NW 55TH Terrace Miami, FL 33142. CHAPMAN submitted required information and documents through an online portal set up to distribute benefits under the program. On January 20, 2022, CHAPMAN submitted a written document titled "3-day notice to pay rent or quit." These documents were dated December 7, 2021, and purportedly signed by Individual 2, the defendant's mother. Investigation by your Affiant revealed that Individual 2 died on May 25, 2020. The State of Florida accepted the representations in CHAPMAN'S application and approved payments totaling $15,000.   These payments were made into a bank account controlled by CHAPAMAN.

### Conclusion

34.     I submit that there is probable cause to believe there is evidence that CHAPMAN committed violations of 18 U.S.C. §§ 1349, 1343 and 1344 (conspiracy to commit wire fraud, wire fraud and bank fraud). Accordingly, I hereby request issuance of a warrant for the arrest of CHAPMAN.

**FURTHER AFFIANT SAYETH NAUGHT.**

CURTIS WILKINS
SPECIAL AGENT
UNITED STATES POSTAL SERVICE
OFFICE OF INSPECTOR GENERAL

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Face Time this _3rd_ day of July 2024.

HONORABLE JONATHAN GOODMAN
UNITED STATES MAGISTRATE JUDGE

10